Armese E. SAUNDERS, Appellant
(Defendant below),

v.

Lawrence E. SAUNDERS, Appellee
(Plaintiff below).

No. 3801.

Supreme Court of Wyoming.

Feb. 19, 1970.

Rehearing Denied March 25, 1970.

Margie M. Williams, Cody, for appellant.

Simpson, Kepler & Simpson and Alan K. Simpson, Cody, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

In certain appeals it is necessary to endure some tedium in the recitation of the trial court's procedures in order to allow proper consideration of the rulings there made. This is such an appeal. It is a ramification of a divorce action begun some two and a half years ago and in continuous litigation since that time with four separate hearings at which evidence was presented.

The plaintiff-husband in 1967 brought a complaint for a divorce on the ground of indignities. Defendant responded with a general denial. After some preliminaries, trial was held by the court in a bifurcated

hearing—that relating to cause for divorce in October 1967 and that pertaining to the finances and property settlement in January 1968. Shortly after the hearing concluded a decree issued granting plaintiff the divorce, defendant the custody of the children; dividing the property with some particularity; ordering the sale of the house; and delineating the amounts of alimony and support money to be paid by the plaintiff. Defendant filed a notice of appeal but thereafter abandoned it. In June of 1968 plaintiff requested an order of contempt of court against defendant for her failure to allow the residence property to be shown to prospective purchasers in violation of the court's decree. Thereafter in the same month under the provisions of Rule 60(b), W.R.C.P., defendant filed a "Motion to Set Aside Part of Decree and to Stay Proceedings to Enforce Judgment Until New Trial Be Had on the Financial Condition of the Parties" on the ground that the distribution of the property of the parties was made on misrepresentation of the plaintiff as to the financial condition of the parties. On July 10, 1968, the court after taking testimony found defendant guilty of contempt of court for refusing to comply with the decree of divorce by allowing the residence property to be shown to prospective buyers at reasonable times but provided that no action should be taken to enforce the contempt finding provided defendant would allow the agent to show the property. On the same day defendant filed a petition for modification, apparently based on changed conditions, and an "Amended Motion to Set Aside Part of Decree and to Stay Proceedings to Enforce Judgment Until New Trial Be Had on Financial Condition of the Parties" on the ground that the distribution of the parties' property was made on fraudulent misrepresentation of the plaintiff as to the financial condition of the parties. After some interim proceedings, including a motion of plaintiff to dismiss defendant's mo-

tions, the court took testimony on this aspect and entered an order, providing inter alia, "Plaintiff's Motion to Dismiss the Motion and Amended Motion to Set Aside Part of Decree and to Stay Proceedings to Enforce Judgment Until New Trial Be Had on the Financial Condition of the Parties, is hereby granted and sustained by and for the reason that no evidence of Plaintiff's fraud or misrepresentation has been presented to the Court," and that except in certain noted particulars the original decree of divorce should remain in full force and effect. On the same day that this order issued the defendant filed a motion requesting, on the ground that new evidence had been discovered, the court to reopen the hearing on her motion and amended motion, whereupon plaintiff filed motion for punishment for contempt and motion to dismiss defendant's motion. The matters came on for hearing in March 1969. Following the presentation of oral evidence, the court upon plaintiff's request dismissed the motion for punishment for contempt and entered an order, finding that no newly discovered evidence had been presented to the court and dismissing the defendant's motion to reopen. It is from this later order that the appeal is taken.

■ As indicated in our recounting of the previous occurrences in the case, the question of plaintiff's fraud and misrepresentation as to the financial condition of the parties was definitely and positively resolved by order of the trial court with no appeal taken therefrom. Accordingly, the contention that plaintiff fraudulently misrepresented the parties' assets at the original hearing on January 26, 1968, the burden of the appeal, is totally misdirected, and the citations of authority on that issue are entirely irrelevant. If defendant has any quarrel with the court's determination that she had failed to prove fraudulent misrepresentation she was privileged to appeal from the order.[1] This she failed to do and that matter is closed. Instead, on the oc-

---

1. Present counsel for defendant did not enter the case until June 21, 1968, after the time for appeal had expired.

casion of the court's issuing the order against her she sought by a motion to reopen the hearing on the ground that new evidence had been discovered which could not have been produced at the time of the hearing. After a trial on this motion, the court found that no newly discovered evidence had been presented to the court, and accordingly, denied the motion to reopen, which point is the sole question before us on appeal.

Defendant's argument is that shortly before the July 1968 hearing, which related to the fraudulent misrepresentation, counsel for plaintiff gave her attorney a purported copy of the 1967 income tax return of the parties, which as she discovered later by communicating with the Internal Revenue Service was not the report which was actually filed there. The copy given her did not reflect an item under miscellaneous income, which was included in the filed report:

> "Stock option, 12/29/67, 1500 shares Husky Oil Canada Ltd. common stock Cost $17,941.07—Market Value $33,750.00 * * * Total miscellaneous income * * * 15,808.93."

Questioned as to the circumstances regarding the filing of the return, plaintiff said that after defendant had agreed they should file a joint return for 1967 the two had signed copies of a Form 1040 which were not then completed; from 1963 through 1967 he had sustained losses from farming operations of nearly $22,000, been audited for the years 1965 and 1966, and the farm losses challenged; because subsequent to 1967 he could not file and take advantage of joint tax rates, would have lost exemptions for two dependents, and anticipated the 10 percent additional income tax, he had advanced on his 1967 tax return which was filed with the Internal Revenue Service April 15, 1968, the tax return which was different from his only remaining file copy which was later delivered to defendant's counsel. Plaintiff said the Husky shares were issued to him in April 1968 and he borrowed the money to exercise the option May 14, 1968.

At the hearing prior to the divorce decree and property settlement, he had been asked by defendant's counsel regarding the stock options and had testified as follows:

"Q. Do you own any stocks of Husky Oil Company? A. Not particularly, no.

"Q. Do you own any stock of Husky Oil Company? A. No.

"Q. Not any at all? A. No.

"Q. Why did you say, not particularly?

A. There are some possibilities that someday I might be able to do so.

"Q. Do you have some options? A. Yes.

"Q. Are they of value? A. I know of no value on them until they are exercised.

"Q. What options do you have? A. Oh, I have options to purchase within the next ten years common shares.

"Q. How many? A. Total of five thousand.

"Q. At what price? A. $12.94 Canadian.

"Q. And they are currently worth how much Canadian? A. I would be unable to say. Twenty-two, twenty-three dollars, somewhere in that vicinity.

"Q. As of today, if you wanted to, you could buy those shares at twelve and sell them at twenty-two, five thousand shares; is that right? A. That's not exactly right, no.

"Q. Tell me what is right. A. The options come due in installments, so many each year for ten years, five hundred each year, and they cannot be purchased and sold at the kind of profit you mention because any such profit would go to the company. They have to be held and retained.

"Q. For how long? A. An inside minimum must be in excess of six months.

"Q. But you don't show that anywhere on your list of assets? A. I know of no way to value that as an asset.

"Q. Do you feel that it is of any value to you? A. Not until I can afford to exercise them.

"Q. But when, as and if you can afford to exercise them, it is worth, you can buy five hundred shares a year for ten years; is that right, five thousand shares? A. When, as and if I can afford them."

 An analysis of the evidence on this aspect shows that defendant and her counsel at the time of the divorce trial were well aware of the existence of the stock options held by plaintiff and the possibilities of his exercising them. It is true that defendant did not volunteer any information as to what he expected to do regarding the options but consistent with the court's findings he did not fraudulently misrepresent. This court has discussed the relevant law many times and has adopted the general rule that the granting or denial of a new trial on the ground of newly discovered evidence is within the sound discretion of the trial court, its decision not to be disturbed except where there has been clear abuse of discretion. A party cannot neglect to exercise such diligence in the preparation of his case as the circumstances reasonably suggest and as would enable his attorney to take the necessary steps to procure the evidence, go to trial without it, and when defeated be entitled to a new trial for the lack of evidence which could have been produced had proper diligence been exercised. York v. North Central Gas Co., 69 Wyo. 98, 237 P.2d 845, 852–853; Hardendorf v. Gafner, 53 Wyo. 427, 84 P.2d 719, 721.

In the present appeal there is no reasonable basis for saying that the court abused its discretion in holding that no newly discovered evidence had been presented. True, the copy of the parties' 1967 income tax report was not in the hands of the defendant at the time of the original trial or the hearing on the fraudulent misrepresentation. However, the existence of the plaintiff's stock options and all facets thereof, including plaintiff's intention to exercise, the source of funds with which this would be done, and like matters, were known or with reasonable diligence could have been developed at the original hearing.

We find no error and the order must be affirmed.

Affirmed.